FILED

2018 MAY -8  PM 12: 48

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INDICTMENT** |
| Plaintiff, | ) | |
| | ) | CASE NO. 1 : 18 CR 229 |
| v. | ) | |
| | ) | JUDGE  JUDGE ADAMS |
| WILLIAM L. WINE, JR., | ) | |
| Defendant. | ) | Title 18, Sections 1343 and 2, |
| | ) | United States Code |
| | ) | |

GENERAL ALLEGATIONS

1.      At all times material herein, Defendant WILLIAM L. WINE, JR. ("WINE"),
formerly a resident of the State of California, moved to the Cleveland, Ohio metropolitan area
within the Northern District of Ohio, Eastern Division, in 2013.

2.      On or about August 14, 2012, Kenton Industries, Ltd. ("Kenton") was organized
under the laws of the State of Ohio as limited liability company for the purpose of engaging in
mineral processing in Cleveland, Ohio.   Kenton's Articles of Incorporation reflect that K.F., an
individual not charged herein, served as its Managing Member.   Kenton maintained a bank
account at U.S. Bank, ending in #8577 ("Kenton account"), in Euclid, Ohio, within the Northern
District of Ohio, Eastern Division.

3.      At all times material herein, Trade Monster ("Trade Monster") was an on-line
brokerage service investors and investment managers used to buy and sell securities and evaluate
the performance of stocks and other investment instruments.   Trade Monster used Apex

Clearing Corporation ("Apex") with offices in Lake Success, New York, as a clearing house to conduct transactions for its customers.

4.      At all times material herein, Defendant was associated with an attorney, J.C., an individual not charged herein, who practiced law in Pasadena, California.   J.C. was affiliated with a Pasadena, California law firm ("Pasadena Firm") who utilized a legal services trust fund account at Gilmore Bank ending in #5909 ("trust account") in Pasadena, California.   J.C. and the Pasadena Firm also filed Kenton's Articles of Incorporation with the State of Ohio.

COUNTS 1 - 3
(Wire Fraud, in violation of 18 U.S.C. § 1343)

The Grand Jury charges:

5.      The general allegations in paragraphs 1 through 4 are incorporated herein and realleged by reference.

6.      From in or around March 2012, through in or around May 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant WILLIAM L. WINE, JR., devised and intended to devise a scheme and artifice to defraud his investment clients, including J.D., T.V., and D.M., individuals not charged herein, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises as set forth below.
It was part of the scheme and artifice to defraud that:

7.      Prior to moving to Cleveland, Ohio, Defendant offered his services as an investment advisor and gained control over the individual retirement accounts ("IRAs") of W.W., a relative, not charged herein, and W.W's, associates, individuals identified as J.D., T.V., and D.M.   W.W., J.D., T.V., and D.M. are all residents of the State of California.

8.      At all times material herein, Defendant worked with K.F. at Kenton.   From in or around 2013, through in or around 2014, Defendant and K.F. resided together at an address on West 9th Street in Cleveland, Ohio.

<u>J.D.'s Investments</u>

9.      In or around 2011, J.D. began to transfer his IRAs to Defendant due to a recent divorce.   Defendant told J.D. that he would use Trade Monster to manage the IRA funds.

10.      From on or about April 9, 2012, through on or about May 23, 2013, J.D.'s monies were transferred and caused to be transferred from his IRAs to the Pasadena Firm's trust account, without J.D.'s knowledge, on the dates and amounts set forth in the chart below:

| Approximate Date | Approximate Amount |
|---|---|
| April 9, 2012 | $37,500 |
| June 27, 2012 | $164,000 |
| May 23, 2013 | $87,500 |

11.      On or about May 24, 2013, Defendant wired and caused to be wired by instructing J.C. or another individual at the Pasadena Firm, a portion of the monies deposited into the Pasadena Firm's trust account noted above in paragraph 4, to send approximately $65,000 to the Kenton account.

12.      From in or around July 2012 through in or around May 2013, Defendant did not provide any documents memorializing the transfer of funds described above, a contract regarding the management of funds, or give monthly statements reflecting J.D.'s account activity. Defendant told J.D. to expect receiving monthly distributions of approximately $5,000 to $8,000 starting in March 2015.

13.      At various times, J.D. signed blank distribution forms at Defendant's direction. Defendant also executed J.D.'s signature on Trade Monster documents without J.D.'s knowledge or consent.

14.     In or around March 2014, J.D. learned that $50,000 of his IRA monies had been invested in Kenton without his permission.   Defendant also sent J.D. an email with a video link explaining Kenton's operations.

15.     On or about May 15, 2015, Defendant sent J.D. an email which provided assurances that J.D. would begin receiving monthly distributions in July 2015.

16.     In or around early 2015, W.W. told J.D. that all his IRA monies transferred to Defendant were liquidated and there were no remaining funds at Trade Monster.

T.V.'s Investments

17.     In or around the Fall of 2012, T.V. decided to move her retirement investments to Defendant's management based on his representations that he was an expert in investing and administering substantial assets for W.W.

18.     In or around the Fall of 2012, T.V. signed IRA Distribution Request forms, at Defendant's instruction, which she believed allowed distributions upon her reaching 65 years of age.

19.     From on or about October 19, 2012 through on or about June 24, 2013, Defendant used the aforementioned IRA Distribution Request form to transfer monies, without T.V.'s prior knowledge and consent, from her retirement accounts to the Pasadena Firm's trust account on the dates and amounts set forth in the chart below:

| Approximate Date | Approximate Amount |
| --- | --- |
| October 19, 2012 | $120,000 |
| June 24, 2013 | $35,000 |

4

20.     On or about October 22, 2012, Defendant wired and caused to be wired by instructing J.C. or another individual at the Pasadena Firm, a portion of the monies deposited into the Pasadena Firm's trust account noted above in paragraph 4, to send approximately $60,000 to the Kenton account.

21.     On or about June 25, 2013, Defendant wired and caused to be wired by instructing J.C. or another individual at the Pasadena Firm, a portion of the monies deposited into the Pasadena Firm's trust account noted above in paragraph 4, to send approximately $18,000 to the Kenton account.

22.     Upon transferring her retirement funds, Defendant advised T.V. that 10% of her monies would be invested in Kenton with the remaining 90% placed under his management. Defendant also promised a monthly retirement income of $3,000 from T.V.'s retirement investment upon her turning 65 years of age.

23.     In or around October 2012, T.V. told Defendant that she needed approximately $30,000 to purchase a vehicle for a relative.   Defendant indicated that he would set aside $8,000 to cover the taxes arising from the $30,000 distribution.   Defendant failed to send T.V. $8,000 to cover her tax liability and made one payment to the IRS on her behalf.   T.V. entered into a payment plan to pay the remaining tax due and owing to the IRS.

24.     In or around March 2013 and in and around March 2014, Defendant prepared T.V.'s tax returns for the 2012 and 2013 tax years.   As a result, T.V. owed an additional $20,000 to the IRS.

25.     Going forward, Defendant did not send T.V. any account statements or other documentation reflecting the value of her investment accounts.   Defendant did not provide any

documents memorializing the transfer of funds described above, a contract regarding the management of funds, or give monthly statements reflecting T.V.'s account activity.   Other than the $30,000 distribution described above, T.V. did not receive any other distributions or withdrawals from her retirement accounts.

D.M.'s Investments

26. On or about March 17, 2011, D.M. had an IRA account and gave Defendant limited management authority over the account pursuant to a "Limited Trading Authorization Agreement" agreement they executed.   At the time, D.M.'s IRA account was valued at approximately $630,000.   Defendant regularly provided account statements to D.M. for a period of time afterwards.

27. In or around late 2011 through in or around early 2012, Defendant instructed D.M. to sign forms for the purpose of receiving monthly IRA distributions.

28. On or about April 12, 2012, Defendant diverted approximately $500,000 from D.M.'s Trade Monster IRA account to the Pasadena Firm's trust account.   Defendant told D.M. that the transaction was an IRA rollover and that some of D.M.'s funds were invested in Kenton. Defendant provided updates and cellular telephone video regarding Kenton's operations while asking for additional investments in Kenton.

29.     From on or about March 19, 2012, through on or about April 10, 2012, Defendant transferred monies from D.M.'s IRA account to the Pasadena Firm's trust account on the dates and in the amounts set forth in the chart below:

| Approximate Date | Approximate Amount |
| --- | --- |
| March 19, 2012 | $22,000 |
| April 10, 2012 | $475,000 |

30.     From in or around January 2012 through in or around September 2012, D.M. received monthly distribution checks from Defendant of approximately $5,500.

31.     In or around July 2013, Defendant visited D.M.'s residence in California and advised that D.M.'s investments were managed properly and producing good returns. Defendant further stated that the returns on D.M.'s investments were very lucrative and would generate approximately $1,000,000 yearly.

32.     On or about September 8, 2014, D.M. received a letter from the IRS indicating that his 2012 individual tax return was improperly prepared as it failed to report approximately $524,500 in taxable income arising from the monies withdrawn from Trade Monster through Apex.   The IRS letter further indicated that D.M. owed approximately $286,000 in additional taxes, penalties and interest.   Defendant prepared D.M.'s tax returns for 2012 and told D.M. that the IRS' letter was sent in error.

33.     On or about May 11, 2015, Defendant sent an email from the State of Ohio to the State of California, in response to D.M.'s inquiries about the status of his investments, indicating that Kenton was "very close" to becoming a profitable business.

<u>The Violation</u>

34.    From in or around March 2012, to in or around May 2015, without J.D., T.V. and D.M.'s knowledge or consent, Defendant wired and caused to be wired monies from J.D., T.V. and D.M.'s IRA and retirement investment accounts to the Pasadena Firm's trust account and sent wire communications from the State of Ohio to the State of California to enrich himself and others through bank accounts, including the Kenton account.

35.    On or about the dates listed below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant, WILLIAM L. WINE, JR., for the purpose of executing the scheme and artifice to defraud his clients, to enrich himself and others to obtain money and property by means of false and fraudulent pretenses, representations, and promises, transmitted or caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds for the purpose of executing such a scheme or artifice, each constituting a separate count:

| Count | Approximate Dates | Description |
|---|---|---|
| 1 | May 24, 2013 | Wires from the trust account to the Kenton account in the amount of approximately $65,000, belonging to J.D. |
| 2 | June 25, 2013 | Wires from the trust account to the Kenton account in the amount of approximately $18,000, belonging to T.V. |
| 3 | May 11, 2015 | Defendant's email sent from the State of Ohio to D.M. in the State of California. |

All in violation of Title 18, United States Code, Section 1343.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.