IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:18CR229 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | UNITED STATES OF AMERICA'S |
| WILLIAM L. WINE, JR., | ) | SENTENCING AND RESTITUTION |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by and through Justin E. Herdman, United States Attorney, through Robert J. Patton and Suzana K. Koch, Assistant United States Attorneys, and respectfully submits this Sentencing and Restitution Memorandum in anticipation of the sentencing hearing set for Tuesday, April 16, 2019, at 12:00 p.m.

          Respectfully submitted,

          Justin E. Herdman
          United States Attorney

By:   /s/ *Robert J. Patton*
       Robert J. Patton (OH: 0066590)
       Suzana K. Koch (OH: 0073743)
       Assistant U.S. Attorneys
       Suite 400, U.S. Courthouse
       801 West Superior Avenue
       Cleveland, Ohio 44113
       Tel. No. (216) 622-3856/3748
       Fax No. (216) 522-7309
       E-mail: Robert.Patton2@usdoj.gov
       E-mail: Suzana.Koch@usdoj.gov

**MEMORANDUM**

This memorandum will address the primary components of this Court's consideration of Defendant's sentence. On January 14, 2019, Defendant William L. Wine, Jr. ("Defendant") pleaded guilty to three counts of Wire Fraud in violation of Title 18, United States Code, Section 1343. The first part of this memorandum will state the government's position on loss amount, sentencing enhancement applicability and corresponding guideline calculation under the United States Sentencing Guidelines ("USSG"). Secondly, the government will then turn to the factors set forth in Title 18, United States Code, Section 3553 and their application to the present case. Finally, the government will present its position on restitution.

**I.      Guideline Calculation**

    **A.      Loss Amount**

As an initial matter, a district court is required to make a finding as to loss amount by a preponderance of the evidence using a reasonable estimate predicated upon the facts of the case. The Sixth Circuit Court of Appeals has announced that a district court determines loss by a preponderance of evidence standard. *United States v. Blackwell*, 459 F.3d 739, 772 (6th Cir. 2006) (*citing United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005)). In describing the above standard for ascertaining a loss amount, the Sixth Circuit noted that, "the district court's findings are not to be overturned unless they are clearly erroneous." *United States v. Triana*, 468 F.3d 308, 321 (6th Cir. 2006) (*citing United States v. Guthrie*, 144 F.3d 1006, 1011 (6th Cir. 1998)) *See United States v. Poulsen*, 655 F.3d 492, 512-513 (6th Cir. 2011) (reviewing the District Court's adherence to Rule 32(i) of the Federal Rules of Criminal Procedure as part of making a ruling on loss amount) and *United States v. Abdelsalam*, 311 Fed.Appx. 832, 845-846, 2009 WL 415987 (6th Cir. 2009). With respect to adjudicating the loss amount arising from

financial frauds, the *Triana* court noted, "[i]n situations where the losses occasioned by financial frauds are not easy to quantify, the district court need only make a reasonable estimate of the loss, given the available information. Such estimates 'need not be determined with precision.'" *Triana*, *supra*., at 320. (citations omitted) (*citing United States v. Miller*, 316 F.3d 495, 503 (4th Cir. 2003) and Application Note 2, subpart (C), to USSG § 2B1.1)[1]. The *Triana* court also noted the USSG's distinction between "actual loss" and "intended loss." *Id*. "Actual loss" is "the reasonably foreseeable pecuniary harm that resulted from the offense." *Id*. (*citing* Application Note 2, subpart (A)(I) and (ii), to USSG § 2B1.1)[2]. "Intended loss" is "the pecuniary harm that would have been possible or likely to occur." *Id*. (citations omitted.) In analyzing the foregoing distinction, the *Triana* court followed Application Note 2 to USSG § 2B1.1 which states that, "loss is the greater of actual loss or intended loss." *Id*. Therefore, a district court must determine the greater of actual loss and intended loss, making a reasonable estimate, by a preponderance of the evidence.

      A defendant's loss calculation is predicated upon the actual loss or intended loss caused by defendant's conduct rather than his or her own personal gain as a result of the criminal conduct. In *Triana*, the defendant, who had previously been convicted of health care fraud, was convicted of fraudulently billing Medicare, through his company, for approximately $2,900,000 for podiatric services and receiving approximately $1,700,000 in payments. The district court found the appropriate loss amount to be $1,700,000. On appeal, Triana argued that his loss amount should have been the amount of his own personal gain. The *Triana* court rejected this

---

[1] In the 2016 edition of the USSG, the notion of a "reasonable estimation of loss" is set forth in § 2B1.1, Application Note 3(C), p. 96.

[2] In the 2016 edition of the USSG, the definitions of "Actual Loss," "Intended Loss," and "Pecuniary Harm" as described in § 2B1.1, Application Note 3(A)(i)(ii) and (iii), respectively, p. 95-6.

argument in holding, "[c]ourts have consistently held that in calculating loss, 'substitution of defendant's gain is not the preferred method because it ordinarily *underestimates* the loss.'" (emphasis in original.) *Id*., at 323. (*citing United States v. Snyder*, 291 F.3d 1291, 1295 (11th Cir. 2002), *United States v. Chatterji*, 46 F.3d 1336 (4th Cir. 1995) and *United States v. Haddock*, 12 F.3d 950, 960 (10th Cir. 1993)). Accordingly, Defendant is legally responsible for the entire scope of the financial harm occasioned by their criminal conduct rather than the benefit they received.

The Sixth Circuit has also addressed circumstances wherein a defendant disputes the loss amount stated in the Presentence Investigation Report (PSR) submitted to a court. Although there is no dispute on loss in this case, when the loss amount is disputed the government must demonstrate the loss amount by a preponderance of the evidence or the district court must engage in a fact-finding process. *Poulsen*, *supra*., 655 F.3d at 513. The *Poulsen* Court noted, "[the court may not blindly accept the PSR, but '[when a defendant fails to produce any evidence to contradict the facts set forth in the PSR, a district court is entitled to rely on those facts when sentencing the defendant.'" *Id*. (*quoting United States v. Garcon*, 506 F.3d 461, 467 (6th Cir. 2007)). Therefore, the *Poulsen* Court held that the government's burden to produce evidence is "triggered" when a defendant offers something more than a "bare denial" regarding the accuracy of the loss amount described in the PSR.[3] *Id*.

In the present case, the proper loss is calculated in one group as all the counts arise from violations of 18 U.S.C. § 1343 (Wire Fraud). Using the holding of *Triana*, the loss amount is derived from victims' IRA accounts Defendant controlled and used throughout the scheme.

---

[3] In *Poulsen*, defense counsel's argument at sentencing that the "loss amounts were not proven at trial" was rejected as the loss amount is determined by "losses stemming from criminal activity based on a preponderance of the evidence." *Id*., supra, 655 F.3d 513-514.

Those amounts per the plea agreement's factual basis are as follows: $289,000 to victim J.D. (Count 1), $155,000 to victim T.V. (Count 2) and $497,000 to victim D.M. (Count 3) for a total loss amount of $941,000.

### B. Sentencing Enhancements

The following enhancements apply to all the counts in the Indictment:

**Abuse of Position of Trust - USSG § 3B1.3**

As set forth in USSG § 3B1.3, a defendant's offense level increases by two-levels "[i]f the defendant abused a position of public or private trust . . .." *See United States v. Allen*, 712 Fed. Appx. 527 (6th Cir. 2017); *United States v. Tribble*, 206 F.3d 634, 635 (6th Cir. 2000); *United States v. Ragland*, 72 F. 3d 500, 502 (6th Cir. 1996). The purpose of §3B1.3 is to penalize defendants who take advantage of a position that provides them with the freedom to commit a difficult-to-detect wrong." *United States v. Brack*, 651 F.3d 388, 393 (4th Cir. 2011) (*quoting United States v. Bollin*, 264 F.3d 391, 415 (4th Cir. 2001)). "The trust relationship arises when a person or organization intentionally makes himself or itself vulnerable to someone in a particular position, ceding to the other's presumed better judgment some control over their affairs." *United States v. Brogan*, 238 F.3d 780, 783 (6th Cir. 2001); *Ragland*, 72 F. 3d at 503.

For the enhancement to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense and the person or persons which defendant held such a position must have been the victim or intended victim of the offense. *Id*. at 502 (*citing United States v. Moored*, 997 F.2d 139, 145 (6th Cir. 1993)). *See also United States v. Kaminski*, 501 F.3d 655 (6th Cir. 2007) ("abuse of trust" enhancement properly applied to a defendant who sold FDA-unapproved drugs to the public); *United States v. Allison*, 59 F.3d 43, 46 (6th Cir. 1995) (sentence properly enhanced

5

where defendant, responsible for drafting checks to be sent to creditors and reconciling bank statement when checks were returned, used her position to embezzle the funds intended to pay the creditors), *cert. denied*, 516 U.S. 1002 (1995)). The decision by a lower court to apply USSG §3B1.3 is a question of law reviewed *de novo*. *Tribble*, 206 F.3d at 635 (*citing Ragland*, 72 F.3d at 502. S*ee United States v. Dixon*, 66 F.3d 133, 135 (6th Cir. 1995)).

To determine whether Defendant was in a position of trust, Sixth Circuit precedent dictates that the key factor is to look at "the level of discretion accorded to an employee" as "the decisive factor in determining whether his position was one that can be characterized as a trust position." *Brogan*, 238 F.3d at 783 (*quoting Tribble*, 206 F.3d at 637). The position must be one "characterized by substantial discretionary judgement that is ordinarily given considerable deference." *Id.* (*quoting Ragland*, 72 F.3d at 503). *See United States v. Hodge*, 259 F.3d 549, 556 (6th Cir. 2001) (holding application of two-level abuse of trust enhancement appropriate); *United States v. Brown*, 47 Fed. Appx. 305, 313 (6th Cir. 2002) (abuse of trust position properly applied as defendant had trust relationship with victims and exercised considerable discretion); *United States v. Lang*, 333 F.3d 678, 683 (6th Cir. 2003) (enhancement upheld where defendant's unsupervised discretion to hire independent companies and submit their invoices for payment facilitated both the commission and concealment of the offense); *United States v. Gilliam*, 315 F.3d 614, 618 (6th Cir. 2003) (explaining that a "position of trust arises almost as if by implication when a person or organization intentionally makes himself or itself vulnerable to someone in a particular position, ceding to the other's presumed better judgment some control over their affairs" (internal quotation marks omitted)). Simply put, the court looks to the amount of discretion Defendant had to act on behalf of the victim. An abuse of position of trust is typically those persons holding positions where there is significantly less supervision than

6

employees whose responsibilities have little to no discretion. *United States v. Cox*, 665 Fed. Appx. 457, 460 (6th Cir. 2016); *See also Brogan*, 238 F.3d at 783; USSG § 3B1.3 cmt. n. 1 (examples of where the enhancement is appropriate correspond to the types of relationships where fiduciary duties are often implied: physician-patient, lawyer-client, officer-organization); *United States v. Fata*, 650 Fed. Appx. 260, 263 (6th Cir. 2016) (holding district court properly added two-levels to sentence based on abuse of position of trust by physician who intentionally misdiagnosed patients).

Here, the abuse of trust enhancement is clearly applicable to Defendant. A fiduciary duty exists between an investment advisor and a client and the inherent nature of the work itself naturally conveys a substantial degree of discretion to the defendant. *Tribble*, 206 F.3d at 637. *See United States v. Trammell*, 133 F.3d 1343, 1355-56 (10th Cir. 1998) (holding abuse of trust by a fiduciary was appropriate where defendant used his position as an insurance agent to solicit funds from investors claiming to purchase annuities but used funds for his own personal benefit). "An investment advisor/broker is typically an individual who is entrusted with the discretionary authority to manage the assets of his or her clients through the application of specialized knowledge. Such a person is well positioned to commit a difficult-to- detect wrong. This is especially true where the investment advisor/broker is his own employer . . . and is therefore subject to no internal supervision or authority." *United States v. Queen*, 4 F.3d 925, 929 (10th Cir. 1993) (holding that defendant occupied a position of trust); *United States v. Hirsch*, 239 F.3d 221, 227 (2d Cir. 2001).

In this case, Defendant offered his services as an investment advisor to victims in order to gain control over their individual retirement accounts where he had significant discretion to use his clients' money as he wished. Additionally, Defendant occupied a position of trust based on

the personal relationships with many of his clients. Many of his clients were associates of his father. *See Hirsch*, 239 F.3d at 228 (defendant developed personal relationships with his client wherein they relied on and trusted him). Like *Hirsch*, Wine's abuse of trust facilitated his crime as he used his client's trust in him to discourage them from demanding their money and the lack of oversight permitted him to commit the offense virtually undetected. Abuse of a purely personal relationship of trust in furtherance of a fraudulent scheme is a legitimate ground for imposition of the enhancement. *United States v. Baldwin*, 414 F.3d 791, 799 (7th Cir. 2005) (*citing United States v. Strang*, 80 F. 3d 1214, 1220 (7th Cir. 1996)) (affirming application of abuse of trust enhancement where defendant, although not a licensed investment broker, convinced victims to invest in a fraudulent scheme by befriending them). Defendant transferred funds from the IRA accounts to a trust account at a law firm in California where he would then have individuals wire money from the IRA accounts to a Kenton Industries account. "Where an individual makes himself particularly vulnerable by entrusting another with substantial authority and discretion to act on his behalf and then relies upon and defers to that person, a decision to take advantage of that trust and vulnerability is particularly abhorrent, as it undermines faith in one's fellow man in a way that the ordinary pick-pocket simply cannot." *Ragland*, 72 F. 3d at 503. It should be noted that, Defendant has previously been convicted of a similar offense where he was subjected to a two-level abuse of trust enhancement. Based on the above, the abuse of position of trust enhancement should be applicable to Defendant.

Accordingly, Defendant's USSG guideline calculation is as follows:

| Counts 1-3 – Wire Fraud, 18 U.S.C. § 1343 | | |
|---|---|---|
| Base offense level | 7 | § 2B1.1(a)(1) |
| Loss: (between $550,000 - $1,500,000) | 14 | § 2B1.1(b)(1)(H) |
| Abuse of Position of Trust | 2 | § 3B1.3 |
| **Total Offense Level before Acceptance of Responsibility** | **23** | |

## II. Application of Title 18 U.S.C. § 3553 Factors

### A. Standard for Imposing a Sentence under 18 U.S.C. § 3553

The Sixth Circuit Court of Appeals requires that a district court provide a reasonable explanation of its application of the sentencing factors set forth in Title 18 § 3553 of the United States Code in imposing sentence. In *Blackwell*, 459 F.3d at 773, the Sixth Circuit announced:

> The job of the district court is to impose "'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)." In reaching a sentence that complies with the purposes of § 3553(a), the district court must consider the Sentencing Guidelines range and all relevant § 3553 factors. While a district court need not explicitly reference § 3553 or recite a list of factors, it must provide a reasoned explanation for its choice of sentence and its explanation must be sufficiently thorough to permit meaningful appellate review. . . . This Court will only uphold a sentence if it is reasonable. Reasonableness contains two facets: substantive and procedural. In reviewing for reasonableness, the Court employs a presumption for substantive reasonableness.

*Id*. (citations omitted). The Sixth Circuit has recently stated that, "while a district court need not engage in a 'ritualistic incantation' of the § 3553(a) factors, its reasoning must be 'sufficiently detailed to reflect considerations listed in § 3553(a)' and to allow for meaningful appellate review." *United States v. Tanner*, 2010 WL 2545589, No. 09-5177, (6th Cir. June 11, 2010) (*quoting United States v. Bolds*, 511 F.3d 568, 581 and *United States v. Mayberry*, 540 F.3d 506, 518 (6th Cir. 2008)). Therefore, a district court must impose a reasonable sentence while expressing enough of its rationale to permit an appellate court to understand the basis for the sentence imposed.

9

**B.     § 3553(a)(1) - The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The nature of Defendant's criminal conduct coupled with the fact that this would be his second conviction within the last 15 years for a similar offense warrants a sentence within the guideline range set forth above. The plea agreement's factual basis accurately recounts the nature and extent of Defendant's conduct.

**C.     § 3553(a)(2)(A) - The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense and § 3553(a)(2)(B) - Afford Adequate Deterrence to Criminal Conduct**

The manner in which Defendant executed his criminal conduct, as described above, warrants the guideline sentence. Such a sentence will reinforce the rule of law regarding engaging in fraudulent schemes over a period of years. Theft by deceit occurring over a period of time should be dealt with more harshly than simple theft. Whereas ordinary theft is by and large an impersonal act, theft by deceit, like its cousin fraud, is entirely personal. *Brogan*, 238 F.3d at 783.

**D.     § 3553(a)(2)(B) - Afford Adequate Deterrence to Criminal Conduct**

A sentence within the calculated guideline range is appropriate to deter similarly situated individuals inclined to engage in wire fraud.

**E.     § 3553(a)(2)(C) - Protect the Public from Further Crime of the Defendant**

There can be no dispute as to the seriousness of defendant's offense. The victims in this case, entrusted defendant with managing their IRA accounts, and defendant abused that trust by misappropriating a substantial sum of money from their retirement accounts and using those funds to pay defendant's own personal expenses. Imposing a guideline sentence as calculated by the government will protect the public.

    **F.**     **§ 3553(a)(2)(D) - Provide Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

The Government submits that any treatment Defendant receives as part of his sentence should be in the context of some term of incarceration as his conduct and restitution ordered.

**III.**     <u>**Restitution will be ordered against Defendant William L. Wine, Jr. pursuant to the Mandatary Victim Rights Act.**</u>

Restitution orders are authorized by statute, 18 U.S.C. §§ 3663, 3663A, and 3664, and are distinct and separate from the United States Sentencing Guidelines. When sentencing a Defendant convicted of an offense against property under Title 18 of the United States Code, including any offense committed by fraud or deceit, the Mandatory Victims Restitution Act (the "MVRA") requires the court to order that the defendant make restitution to the victim of that offense. 18 U.S.C. §§ 3663A(a)(1); 3663A(c)(1)(A)(ii). The MVRA requires those convicted of offenses against property under Title 18 to pay restitution for victims' losses. *United States v. Elson*, 577 F.3d 713, 721 (6th Cir. 2009).

Restitution constitutes punishment. *United States v. Schulte*, 264 F.3d 656 (6th Cir. 2001); *see also United States v. Bearden*, 274 F.3d 1031, 1041 (6th Cir. 2001) (restitution is "punitive rather than compensatory in nature"). "Although the guidelines mandate imposition of restitution where allowable under the statutes, the restitution statutes function independently from the guidelines and do not rely on the guidelines for their validity." *United States v. Sosebee*, 419 F.3d 451, 462 (6th Cir. 2005). "Restitution under the MVRA is a criminal penalty and a component of the defendant's sentence." *United States v. Adams*, 363 F.3d 363 (5th Cir. 2004) (*quoting United States v. Chaney*, 964 F.2d 437, 451 (5th. Cir. 1992)).

The MVRA specifically states that the amount of restitution should be equal to the

11

"amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A) (when a court is ordering restitution, the amount of restitution should be equal to the "amount of each victim's losses as determined by the court." *Sosebee*, 419 F.3d at 462 (18 U.S.C. § 3664(f)(1)(A) (emphasis in original)).

Restitution should be made payable by Defendant William L. Wine, Jr., to the victims of his fraud, in the total amount of $941,000 as follows:

1. J.D. in the amount of $289,000,

2. T.V. in the amount of $155,000; and

3. D.M. in the amount of $497,000.

In this case, the victims were directly harmed as a result of the Defendant's fraud. Here, Defendant unlawfully transferred monies from victim IRA accounts without their knowledge totaling $941,000. As a direct and proximate result of Defendant's affirmative conduct, the victims suffered financial loss. This loss would not have occurred if not for the Defendant's fraudulent actions.

**IV.** **Conclusion**

Defendant engaged in a scheme to defraud his investment clients to gain control over individual retirement accounts by offering his investment services in order to obtain money for his own personal use. Defendant should be held to account for the full measure of his conduct. Accordingly, a sentence within the guideline level set forth in the plea agreement is appropriate. Additionally, restitution should be ordered in the total amount of $941,000, due and payable immediately.

        Respectfully submitted,

        Justin E. Herdman
        United States Attorney

By:   /s/ *Robert J. Patton*
        Robert J. Patton (OH: 0066590)
        Suzana K. Koch (OH: 0073743)
        Assistant U.S. Attorneys
        Suite 400, U.S. Courthouse
        801 West Superior Avenue
        Cleveland, Ohio 44113
        Tel. No. (216) 622-3856/3748
        Fax No. (216) 522-7309
        E-mail: Robert.Patton2@usdoj.gov
        E-mail: Suzana.Koch@us

CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2019, a copy of the foregoing document was filed under seal with the Clerk of Courts. A copy of this filing was sent via email and regular U.S. mail to counsel for the defendant:

                                                  /s/ *Robert J. Patton*
                                                  Robert J. Patton
                                                  Assistant U.S. Attorney